# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVEN A. PATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00699-TWP-MJD |
| | ) | |
| INDIANA UNIVERSITY BOARD OF | ) | |
| TRUSTEES, | ) | |
| LORI REESOR, | ) | |
| INDIANA UNIVERSITY POLICE | ) | |
| DEPARTMENT Consolidated Party in 1:20-cv- | ) | |
| 1583-JRS-MJD, | ) | |
| REBECCA A. SCHUML Consolidated Defendant | ) | |
| in 1:20-cv-1583-JRS-MJD, | ) | |
| BOBBY THOMPSON Consolidated Defendant in | ) | |
| 1:20-cv-1583-JRS-MJD, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Motions for Summary Judgment filed by Defendants

Indiana University Board of Trustees ("IU"), Lori Reesor ("Reesor"), the Indiana University Police

Department ("IUPD"), Rebecca A. Schmuhl[1] ("Schmuhl") (IU, Reesor, IUPD, and Schmuhl,

collectively, the "IU Defendants") (Filing No. 152), and Defendant Bobby Thompson

("Thompson") (Filing No. 156) (all defendants collectively, "Defendants"). *Pro se* plaintiff Daven

A. Patton ("Patton") initiated this action alleging various violations of federal and state law against

the IU Defendants, including 42 U.S.C. § 1983 ("Section 1983"), Title VI of the Civil Rights Act

of 1964 ("Title VI"), Title II of the Americans with Disabilities Act ("ADA"), and the

Rehabilitation Act ("Rehabilitation Act").  Patton claims Thompson, an investigator for the

Monroe County Prosecutor's Office, violated his constitutional rights by signing a charging

---

[1] Schmuhl's last name is misspelled in the case caption.

document related to his 2018 arrest for intimidation.  Following the Court's Order on Defendants' Motions to Dismiss (Filing No. 134), which denied some of Patton's original claims, the Defendants moved for summary judgment on the remaining claims.  For the following reasons, the Motions for Summary Judgment are **granted**, and this action is **dismissed**.

## I.      SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *See* Federal Rule of Civil Procedure. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law.  *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021).  A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material facts" are those that might affect the outcome of the suit.  *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant.  *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

2

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Although *pro se* filings are construed liberally, *pro se* litigants such as Patton are not exempt from procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "*pro se* litigants are not excused from compliance with procedural rules"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). As required by the Local Rules, the Defendants provided Patton with notice regarding his right to respond and submit evidence in opposition to their motions for summary judgment. (Dkt. 159.) Patton failed to respond to the summary judgment motions. This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

Accordingly, the facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.    BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009)

(citation omitted).  As noted above, Patton has not responded to the summary judgment motions, so the Court treats Defendants' supported factual assertions as uncontested.  *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).  The consequence is that Patton has conceded to the Defendants' statement of undisputed facts.  *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission.").  The following facts, supported by admissible evidence in the record and uncontested by Patton, are accepted as true:

**A.**      **Patton's 2016 Suspension and First Request for Readmission**

In March 2016, Patton, an African American male, was a student at Indiana University Bloomington (the "University").  On March 3, 2016, Patton placed a U.S. Postal Service Priority Mail box outside a University building with the words "CALL THE BOMB SQUAD" written in large letters on the outside of the box ([Filing No. 154-5 at 3](); [Filing No. 154-10 at 1]()–3, 10, 16).  Someone reported the box as a suspicious package, and the IUPD was dispatched to respond to the report ([Filing No. 154-5 at 3]()).  The bottom of the box had the words "WHO WILL SURVIVE IN AMERICA" written on it.  The bottom of the box also showed Patton's name as the box's "sender".  *Id*.

On the inside lid of the box, the words "THIS SHIT IS MIND BLOWING" were written.  *Id*.  The box contained a fraternity membership card with Patton's name on it and several library books.  *Id*.  The IUPD later checked video footage that confirmed that Patton had been the person who placed the box there.  *Id*. at 4.  The IUPD obtained a search warrant for Patton's residence from the Monroe County Circuit Court, and in the early hours of March 4, 2016, the IUPD entered Patton's residence and arrested him.  *Id*.

On March 4, 2016, the Monroe County Prosecutor's Office charged Patton with terroristic mischief under Indiana Code § 35-46.5-2-3, which occurs when "[a] person knowingly or

intentionally places or disseminates a device or substance with the intent to cause a reasonable person to believe that the device or substance is a weapon of mass destruction."  Ind. Code § 35-46.5-2-3; (Filing No. 154-14).

IU suspended Patton on March 8, 2016.  (Filing No. 154-6.)  A year after his suspension, Patton requested readmission.  At the time, Reesor was the University's Vice Provost for Student Affairs (Filing No. 154-2 at ¶ 3).  In reviewing Patton's request, Reesor learned that in August 2016, Patton was charged with felony intimidation after sending several emails to the Monroe County Clerk's office regarding video footage of his 2016 arrest (Filing No. 154-7 at 2; Filing No. 154-15).  On March 20, 2017, Reesor denied Patton's request for readmission, informing him that IU would not consider his readmission while the August 2016 charges remained pending (Filing No. 154-2 at ¶ 6; Filing No. 154-8).

**B.**     **Patton's Clery Act Emails and Second Request for Readmission**

Beginning in October 2017, Patton began sending emails to various University officials (Filing No. 154-11).  Many of the emails referred to Patton's belief that the IUPD's response to the "bomb squad" box incident had violated the Clery Act, which requires universities to have policies for the use of emergency alerts.[2] 20 U.S.C. § 1092(f); (Filing No. 154-11 at 6–18). Patton's emails, in short, stated that it was irrational for the IUPD to have believed that Patton had committed "terroristic mischief" involving the threatened use of "weapons of mass destruction" but not have sent an emergency notice regarding the incident (Filing No. 154-11).  Therefore, Patton reasoned, the IUPD must have either violated the Clery Act or never genuinely believed Patton committed terroristic mischief. *Id.*   On or before March 2, 2018, Patton sent emails referring to an investigation by the U.S. Department of Education ("DOE") into the alleged Clery Act violation

---

[2] Patton has not asserted a claim against IU under the Clery Act, and the IU Defendants deny any alleged Clery Act violation.

([Filing No. 154-11 at 17](#)).  Reesor received several of these emails but found them difficult to understand and did not engage with them ([Filing No. 154-2 at ¶ 7](#)).  She either forwarded the emails to other University officials or ignored them.  *Id.*

On March 12, 2018, Patton submitted another request for readmission to Reesor ([Filing No. 154-11 at 21](#)–26).  Reesor re-familiarized herself with the March 2016 incident and ultimately denied Patton's request ([Filing No. 154-2 at ¶¶ 9](#)–10).  She denied the request because, based on the contents of Patton's reinstatement request, she did not believe Patton had accepted or would accept any responsibility for his conduct in March 2016. *Id.* at ¶ 11. Specifically, in his reinstatement request, Patton described the "bomb squad" box as "simply a box of books with a play on words written on it," which "back in the day no one would have even cared about."  *Id.* Patton "went on in the letter to blame the police for investigating the package".  *Id.*  Reesor believed, "[t]he overall message of the letter was not an acceptance of any responsibility," and was instead a message "that everyone other than him was to blame, but that he was prepared to forgive the University for overacting to his 'call the bomb squad' box." *Id.*  Reesor therefore did not believe Patton would refrain from similar behavior if readmitted to the University and would continue to pose a danger to the campus community.  *Id.* at ¶ 12.  None of the emails Patton had previously sent her regarding the Clery Act affected Reesor's decision to deny Patton's request for readmission.  *Id.* at ¶¶ 13–15.  Reesor is unaware of any DOE investigation into the response to the "bomb squad" box incident, and Patton's suggestion that an investigation had occurred played no role in her decision.  *Id.* at ¶ 16.

In her letter denying Patton's March 2018 request, Reesor stated that "[i]n order to be considered for reinstatement in May 2019, I am asking that you continue to seek counseling to address the incidents that happened and how you are working to assure that this behavior does not happen again" ([Filing No. 154-11](#)).  She continued, "[i]f you wish to be considered for

reinstatement, please send me an appeal following May 2019 which also includes documentation of a recent psycho-social assessment of your mental health from a licensed mental health professional. A determination will then be made as to whether you should be allowed to return to Indiana University." *Id.* Reesor did not deny Patton's request for readmission or require a psycho-social assessment because she believed Patton suffered from a mental, psychological, or other disability. Rather, she requested that Patton submit a psycho-social examination to ensure that he would not repeat his prior behavior. *Id.*; Filing No. 154-4 at ¶ 11.

In response to Reesor's denial, Patton sent an email accusing her and IU of discrimination and stating that "[t]his email will be forwarded to both the OCR and FSA[3] enforcement group." (Filing No. 154-11 at 42.) On March 27, 2018, Patton sent an email to the OCR, stating that his email "serves as [his] complaint against Indiana University" for discrimination (Filing No. 154-11 at 38).

## C.   Patton's 2018 Emails

After Reesor denied Patton's March 2018 request for readmission, Patton continued sending emails to her and other University officials. (Filing No. 154-11.) On March 29, 2018, Reesor responded to an email dated March 28, 2018 from Patton regarding his OCR complaint, "acknowledging the receipt of [his] recent emails and that [he had] filed a complaint with OCR" (Filing No. 154-11 at 55). Reesor copied IU's General Counsel, Aimee Oestreich ("Oestreich") on the email and wrote that "because of this complaint, all future correspondence related to Indiana University should be directed to [the] General Counsel's Office." *Id.* at 55–56.

Throughout March and April 2018, Patton sent several emails to Oestreich and Reesor about the progress of his OCR complaint, and about racial discrimination, police misconduct, and white supremacy, among other political topics (Filing No. 154-11 at 45–88). After May 7, 2018,

---

[3] DOE's Office for Civil Rights (the "OCR") and the DOE's Federal Student Aid agency.

Patton began using more extreme and inflammatory language in his emails, often attaching propaganda images relating to communism, fascism, and racism. *Id.* at 87–144. Patton alleges his emails were attempts to "troll" IU. He describes "trolling" as saying things one does not mean in order to upset the listener and elicit an overreaction. (Filing No. 160-1 at 17-18.)

Patton's most concerning emails began on May 25, 2018, when he sent an email to Oestreich titled "I'm ready for this bullshit to be over with [three sad face emojis]". (Filing No. 154-11 at 123.) The May 25, 2018 email starts with a reference to "trolling," stating that

> [r]anting, trolling, and the super hoax . . . are very good ways at relieving the tr[au]ma your officers caused me and the tr[au]ma Lori . . . is trying to cause me. I will stop sending these emails once my complaint is resolved. Those are all benign manifestations of my 'disability'.

*Id.* Near the end of the email, Patton says "ranting aside, the school has not only let me down, but the community, the federal government, terrorists, and everyone who is not racist. I'm just trying to get my degree." *Id.* at 153. The rest of the email, however, contains more menacing messages, including that Reesor will "regret [her] decision" to deny Patton's request for readmission and that "[w]hen the communists take over I will send her to the gulag and erect statues of Lenin." *Id.* at 124. Patton's May 25, 2018 email also includes statements like "[y]'all make me really want see yall [sic] blown up," and "[a]fter the capitalist pigs are guelloteed [sic] the place will look like Rojova [sic]". *Id.* at 124–25. On May 26, 2018, Patton sent an email to Oestreich, copying Reesor, with the subject line "Welcome to the 21st century. You are outdated [weary face emoji] [two flame emojis]." The email primarily contains quotes from various sources about fascism, includes several emojis of flames, and attaches anti-communism propaganda images. *Id.* at 129.

On June 1 and 2, 2018, Patton sent his most worrying emails. Just before 9:00 p.m. on June 1, 2018, Patton sent an email to Reesor with the subject line "I thought about killing you." *Id.* at 134. The body of the email, which Reesor could see once the email was opened, continues

"Is the name of one of Kanye West's newest tracks," and includes a link to the song named in the email's subject line. *Id.* Roughly thirty minutes later, Patton sent an email to Oestreich titled "The FBI might get involved", stating "[t]he cops [sic] lie violated a federal statute and they are the ones who started the super hoax. Someone should kill those pigs anyways . . . . Or they might just get blown up. . . . We are at war. . . . You have already stolen years of my life and I will show no mercy." *Id.* at 137.

At approximately 12:30 a.m. on June 2, 2018, Patton sent another email to Oestreich with the subject line "The Bloodbath is coming," in which Patton states, among other hyper-political statements, "Lying about a bomb being in a dorm room to falsely accuse me of terroristic mischief is an act of war. You should all be assassinated for being complicit. " *Id.* at 142. All three of these emails contain several images, some of which are illustrations of violence. *Id.* at 134–44.

On June 2, 2018, IUPD Officer Schmuhl began investigating the emails. ([Filing No. 154-3 at ¶ 11](#).) She called Patton's grandparents that day as part of her investigation. *Id.* At 1:34 p.m. on June 2, 2018, after Patton's grandparents were made aware of the investigation, Patton sent an email to Oestreich, which he then forwarded to Reesor, stating that his earlier emails were not threats, that he was trolling and frustrated, that he was trying to express himself, and that he was playing an online persona. ([Filing No. 154-11 at 146, 152](#).) A few minutes later, Patton sent another email to Oestreich with the subject line "Mental Illness is an issue that needs more attention," which stated Patton's emails were meant to bring awareness to mental health issues. *Id.* at 148. Roughly two hours later, Patton sent his final email to Oestreich, which he also forwarded to Reesor. In the final email, Patton states he sent his earlier emails from the perspective of an "online persona" and would never engage in violence. He states "I [sic] real life I am using the dept of education. My beliefs are non-violent." *Id.* at 152. Based on the timing and circumstances

of Patton's apology emails, Reesor was not sure whether the email was sincere or an attempt to avert trouble with his grandparents or law enforcement.  (Filing No. 154-2 at ¶ 25.)

**D.**     **Patton's 2018 Arrest and Prosecution for Intimidation**

On June 5, 2018, Schmuhl signed a probable cause affidavit (the "Probable Cause Affidavit") seeking to have Patton arrested for Harassment, a Class B Misdemeanor (Filing No. 154-12).  The Probable Cause Affidavit summarized the history of Patton's emails to IU and University officials, and others beginning October 2017.  *Id.*  The Probable Cause Affidavit stated that most of Patton's emails criticized law enforcement and complained of perceived injustices done to him, including the denial of his requests for readmission, and noted that Patton's emails referred to an alleged OCR investigation.  *Id.*

The Probable Cause Affidavit also described the emails' increasingly inflammatory nature beginning May 25, 2018, which first raised Reesor's concern.  Schmuhl stated:

> On or about the 25th day of May, Mr. Patton sent an email to Aimee Oestreich and carbon copied Dr. Reesor. The email listed a subject of "I'm ready for this bullsh[*]t to be over with." In the email, Patton refers to Dr. Reesor as 'the type of racist that will take pictures[] with black people to say they aren't racists.' This is a reference to a photo Dr. Reesor posted on her Twitter page of herself with a student who won an award. Patton later commented on the denial of his reinstatement request stating, "She tried to screw me over but I predicted that. F[*]ck her too. She will regret that decision in the future." After receiving that email, Dr. Reesor said for the first time she felt targeted by Mr. Patton.

Schmuhl then wrote about Patton's June 1, 2018 emails in detail:

> On or about the 1st day of June, 2018, Mr. Patton sent an email to Dr. Reesor with the subject "I thought about killing you." Dr. Reesor said when she read that she became concerned for her safety and her family's safety. In the email, Mr. Patton states the subject line is the title of a Kanye West song and he provides a link to a YouTube video of the song. Mr. Patton then forwarded the first email to Ms. Oestreich and sent her two more emails. The first email had the subject "The FBI might get involved." In the email, Mr. Patton states, "The cops lie violated a federal statute and they are the ones who started the super hoax. Someone should kill those pigs anyway." He later stated, "You should all get the bullet for what you have done to me. People would support me for killing you because what you did to me is a grave injustice." The second email had the subject "The bloodbath is coming." In that email, Mr. Patton states, "You should all be assassinated for being complicit."

Ms. Oestreich became concerned at that statement because she believed he was now including her as a target. Mr. Patton then forwarded all three emails to Chief Stephenson, and to Robin Hattersley, the Executive Editor of Campus Safety Magazine. Ms. Hattersley said she found the email disturbing and that she did not know who Mr. Patton is."

(Filing No. 154-12 at 3.)

Schmuhl then described the three emails Patton sent on June 2, 2018 after Schmuhl spoke with Patton's grandparents:

The first email had the subject "The emails are not threats." In it, Mr. Patton states, "I am just trolling and frustrated. I am working with the OCR and will resume therapy. I am just frustrated with the process and expressing myself. I apologize if you feel threatened. I am not trying to make you do anything. The email really are benign. I am peaceful." The second email had the subject "Mental illness is an issue that needs more attention." In it, he explains why he admires Kanye West and he states, "I am just trying to express myself like him and spread awareness. Sometimes people take it the wrong way but everyone has things that make them unique. I will stop the emails. But I am glad to see mental health has become a public issue.["] The third email has the subject "This is the last one email. I play an online persona." In the email, Mr. Patton explains that he has been assuming an online persona "just on the internet." He states that he has been role-playing the part of "a left wing extremist." Mr. Patton claims that there is a difference between online and real life. He says that his beliefs are non-violent in real life but online he is "a radical troll." Mr. Patton states that "The emails are only meant to spread awareness. They are not threats and I do not want you to do anything. The emails have just came [sic] off the wrong way."

(Filing No. 154-12 at 4).

At all relevant times, Defendant Thompson was serving as an Investigator for the Monroe County Prosecutor's Office. On June 7, 2018, Thompson signed a charging information document (the "Charging Information") against Patton for Intimidation, a Level 6 Felony (Filing No. 158-3). Although Thompson signed the Charging Information, his supervisor, Jeff Kehr, made the charging decision with respect to the charges filed against Patton. *Id*. Thompson has never been employed by the University or the IUPD (Filing No. 158-4 at ¶¶ 3–4). In the Charging Information, Thompson affirmed that "on or about October 26, 2017 . . . Patton did communicate a threat to commit a forcible felony, to-wit: kill her, to Loraine M. Reesor, with the intent that

Loraine M. Reesor be placed in fear of retaliation for . . . refusing to re-admit Patton into Indiana University." *Id.* The Charging Information was also signed by the Monroe County Prosecutor and witnessed by Schmuhl and Reesor. *Id.* On June 11, 2018, the Monroe County Prosecutor filed the Probable Cause Affidavit and Charging Information, and later that day, a judge in the Monroe County Circuit Court issued a Probable Cause Order for Patton's arrest for Intimidation (Filing No. 154-13). Patton was charged and prosecuted for Intimidation, however, on May 25, 2021 the State of Indiana moved to dismiss the charge without prejudice and that motion was granted. (Filing No. 154-14 at 19-20). The 2018 arrest and prosecution do not appear in his student disciplinary record (Filing No. 154-4 at ¶ 8).

In July 2018, Reesor began working for the University of Wisconsin-Madison and no longer has any authority to re-admit Patton to Indiana University, remove notations from his student disciplinary records, or influence a decision regarding either his readmission or disciplinary records. (Filing No. 154-2 at ¶¶ 2, 32.) And neither Schmuhl, a Lieutenant with the IUPD, nor Thompson, an investigator for the Monroe County Prosecutor's Office, have that authority (Filing No. 154-3 at ¶¶ 2–3; Filing No. 158-4 at ¶ 23). Patton has stated that he is not seeking readmission or expungement remedies from Reesor, Schmuhl, or Thompson, since none of them have the authority to grant that relief. (Filing No. 160-1 at 45, 9-25; 1-15; 48-49.)

Reesor, Schmuhl, and Thompson have all submitted declarations stating that their actions with respect to Patton were not motivated by discrimination or retaliation. According to Reesor's declaration, race played no role in her decision to deny Patton's 2018 request for readmission or her decision to speak to law enforcement about Patton's emails (Filing No. 154-2 at ¶ 33). Reesor did not take any action with respect to Patton's complaints against the University, and she never considered Patton to be disabled. *Id.* at ¶ 30. She also did not provide false information to law enforcement regarding Patton or demand Patton be arrested or prosecuted. *Id.* at ¶¶ 26, 29, 34.

Schmuhl likewise submitted a declaration stating she never took any action with respect to Patton because of his race or any complaint he made, and she never considered Patton to be disabled. (Filing No. 154-3 at ¶¶ 4–7.)  Thompson submitted an affidavit stating he never retaliated or discriminated against Patton "in any way," and never had reason to do so.  (Filing No. 158-4 at ¶ 19.)  Additionally, Libby Spotts, the University's Senior Associate Dean and Director of the Office of Student Conduct, is unaware of any University or IUPD employee, agent, or representative taking any disciplinary action with respect to Patton based on his race or any complaint he made, and she is unaware of any University or IUPD employee, agent, or representative considering Patton to be disabled.  (Filing No. 154-4 at ¶¶ 8–10.)

Since filing this case, Patton has moved to California and has no plans to return to Indiana. (Filing No. 160-1 at 8:1-9.) He obtained a college degree from Purdue Global and is working in his chosen field for a marketing company.  (*Id.* at 9:19; 21–25.)  Patton no longer believes that this litigation is about being readmitted to the University or that he could feasibly attend if readmitted ("It's about the – the principle.  And then, who knows? Maybe I want to get my master's degree. . . . [A]t the time I filed the lawsuit . . . I lived in Indiana then.  That was, like, something I could immediately do, but right now, that's something I can't, like feasibly do immediately")).  *Id.* at 8:10–19; 9:12–16.

E.    **Procedural History**

Patton initiated this action by filing two separate lawsuits—one on March 3, 2020, against IU and Reesor, and one on June 8, 2020, against the IU Defendants, Thompson, the Monroe County Prosecutor's Office, and Jeff Kehr.  The two cases were consolidated on July 20, 2020 (Filing No. 31).  Patton amended his Complaint four times, ultimately asserting sixteen claims alleging that the denial of his 2018 request for readmission and his 2018 arrest and prosecution

violated his First and Fourth Amendment rights, Title VI, the ADA, the Rehabilitation Act, and state law.[4]

In October and November, 2021, the IU Defendants and Thompson moved to dismiss Patton's claims, and on November 4, 2021, the Monroe County Prosecutor's Office and Kehr did the same (Filing No. 102; Filing No. 105; Filing No. 112).  After requesting and receiving an extension of his response deadline, Patton timely filed his response briefs, and Defendants timely filed their replies (Filing No. 114; Filing No. 115; Filing No. 116; Filing No. 121; Filing No. 125; Filing No. 126; Filing No. 127).

The Court granted the Monroe County Prosecutor's Office and Kehr's Motion to Dismiss, dismissing them from the case, and the Court granted in part and denied in part the IU Defendants' and Thompson's Motions to Dismiss (Filing No. 134 at 45).  Of Patton's sixteen claims, the Court dismissed five in their entirety (Counts VIII–X and XV–XVI), and partially dismissed the remaining eleven.  The claims that survived the initial hurdle of a motion to dismiss are:

Count I: § 1983 Free Speech Retaliation against Reesor in her individual capacity and against Reesor in her official capacity as to claims for prospective injunctive relief only;

Count II: Title VI Civil Rights Act as to IU;

Count III: Title II ADA; and Count IV: Sec. 504 Rehabilitation Act; against IU and against Reesor in her official capacity as to claims for prospective injunctive relief only;

Count V: § 1983 1st Amendment Retaliatory Arrest; Count VI: § 1983 1st Amendment Retaliatory Prosecution; Count VII: § 1983 4th Amendment False Arrest; and Count XI: § 1983 Conspiracy to Injure Using Unlawful Means against Reesor, Schmuhl, and Thompson in their

---

[4] Patton's Fourth Amended Complaint misnumbers Patton's last six claims. In its Order on Defendants' Motion for Summary Judgment, the Court renumbered Patton's claims to correct the error (Filing No. 134 at 10 n.3).

individual capacities and against Reesor, Schmuhl, and Thompson in their official capacities as to claims for prospective injunctive relief only;

Count XII: Civil Rights Act as to IU and the IUPD; and

Count XIII: Title II ADA; and Count XIV: Sec. 504 Rehabilitation Act against IU, the IUPD, and Reesor, Schmuhl, and Thompson in their official capacities as to claims for prospective injunctive relief only (Filing No. 134 at 46–47).

The Court further held that Patton's requests for prospective injunctive relief would be limited to his requests for readmission to the University and the removal of the denial of his request for readmission and his arrest and prosecution for Intimidation from his student disciplinary records. *Id.* at 47.

Defendants moved for summary judgment on all of Patton's remaining claims on December 28, 2022 (Filing No. 152; Filing No. 156).  As required by Local Rule56-1(k), Defendants filed a Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment, informing Patton that he was required to respond to Defendants' Motions by January 25, 2023, or by other such date ordered by the Court (Filing No. 155; Filing No. 159).  Patton has not filed a response, submitted evidence, or requested additional time to do either.  Defendants' Motions for Summary Judgment are now ripe for ruling.

### III.     DISCUSSION

The IU Defendants and Thompson each seek summary judgment on all of Patton's remaining claims for a variety of reasons.  Although Defendants have organized their arguments differently, many of their arguments are the same.  For purposes of simplicity, the Court will follow the structure outlined by the IU Defendants.

Defendants first argue that many of Patton's remaining claims against Reesor, Schmuhl, and Thompson in their official capacities should be dismissed for lack of standing.  They next

argue that the existence of probable cause for Patton's 2018 arrest and prosecution bars his Section 1983 claims for alleged First and Fourth Amendment violations.  Defendants then argue Patton cannot succeed on his Section 1983 claims, Title VI claims, or ADA and Rehabilitation Act claims for several reasons.  The Court will address each of Defendants' arguments in turn.

### A.   <u>Lack of Standing for Claims Against Official-Capacity Defendants</u>

In its Order on Defendants' Motions to Dismiss (Filing No. 134), the Court limited several of Patton's claims against Reesor, Schmuhl, and Thompson in their official capacities to claims for injunctive relief only (Filing No. 134 at 46–47 (applying the exception to sovereign immunity announced in *Ex parte Young*, 209 U.S. 123 (1908))).[5]  The Court further specified that Patton's injunctive remedies were limited to his readmission to the University and the expungement of his student disciplinary records related to the denial of his 2018 request for readmission and 2018 arrest and prosecution.  *Id.* at 47.  IU Defendants argue that Patton's claims for injunctive relief against them has been mooted by changes in his life circumstances, and Defendants argue that Patton lacks standing to assert his claims against Reesor, Schmuhl, or Thompson in their official capacities because none of them is able to provide the requested injunctive relief (Filing No. 153 at 17–18; Filing No. 157 at 22–23).  The Court finds the standing argument is dispositive of Patton's claims for injunctive relief, so it will address only that argument.

Employees of state agencies, including Reesor, Schmuhl, and Thompson, are generally immune from liability under the Eleventh Amendment. The United States Supreme Court created a limited exception to this immunity in *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte*

---

[5] Thompson argues in his response brief that any "remaining official capacity claims" other than Patton's claims for injunctive relief are barred by the Eleventh Amendment (Filing No. 157 at 23). Following the Court's Order on Defendants' Motions to Dismiss, there were no remaining official capacity claims against Thompson except Patton's claims for prospective injunctive relief, so this argument is moot (Filing No. 134 at 46–47).

*Young*, a plaintiff may file suit against state officials for prospective injunctive relief to remedy ongoing violations of federal law. *Id.* at 159–60.

The only defendants named in their official capacities are Reesor, Schmuhl, and Thompson, but the undisputed evidence shows that none of them is currently employed by the University or has any authority to readmit Patton to the University, alter his student disciplinary records, or influence a decision regarding either (Filing No. 154-2 at ¶¶ 2, 32; Filing No. 154-3 at ¶¶ 2–3; Filing No. 158-4 at ¶¶ 3–4, 22–23; Filing No. 160-1 at 45, 9-25; 1-15.)  A favorable decision against Reesor, Schmuhl, or Thompson in their official capacities would therefore not redress Patton's alleged injuries. *Doe v. Holcomb*, 883 F.3d 971, 978–79 (7th Cir. 2018).  Because Patton's claims against Reesor, Schmuhl, and Thompson in their official capacities are not redressable, Patton lacks standing to bring them.  The Court **grants** Defendants' Motions for Summary Judgment as to: Counts I and III–IX against Reesor in her official capacity; and Counts X–XII, XI, and XIII–XIV against Reesor, Schmuhl, and Thompson in their official capacities.

## B.    Probable Cause for 2018 Arrest and Prosecution

Defendants also argue that Patton's Section 1983 claims for First Amendment Retaliation and Fourth Amendment False Arrest are barred by the existence of probable cause for his 2018 arrest and prosecution (Filing No. 153 at 18; Filing No. 157 at 13–14, 20).  Probable cause generally bars claims for First Amendment retaliatory arrest and prosecution,[6] and absolutely bars claims of Fourth Amendment false arrest. *Nieves v. Bartless*, 139 S. Ct. 1715, 1726 (2019); *Muhammad v. Pearson*, 900 F.3d 898, 907–08 (7th Cir. 2018) (citations omitted); *see Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018).

---

[6] In *Nieves v. Bartlett*, the Supreme Court held that the "no-probable-cause requirement" should not apply to First Amendment retaliatory arrest claims "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. 1715, 1727 (2019). Patton has not alleged or offered evidence that he was arrested when otherwise similarly situated individuals not engaged in similar speech were not arrested, so the *Nieves* exception does not apply here.

Indiana courts have held that a judicial determination of probable cause in a criminal action constitutes *prima facie* evidence of probable cause in later civil litigation. *Glass v. Trump Ind., Inc.*, 802 N.E.2d 461, 467 (Ind. Ct. App. 2004).  In this case, the Monroe County Circuit Court issued a Probable Cause Order for Patton's arrest and prosecution for Intimidation, and that Order is *prima facie* evidence of probable cause.  Patton may rebut this *prima facie* evidence by showing that the probable cause finding "was induced by false testimony, fraud, or other improper means such as the defendant withholding material facts at the hearing." *Id.*; *see Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010).  "The materiality of an omitted or misrepresented fact depends on its relative importance to the evaluation of probable cause; an omitted fact is material if its inclusion would have negated probable cause." *Whitlock*, 596 F.3d at 411; *see Leaver v. Shortess*, 844 F.3d 665, 669 (7th Cir. 2016) ("The key question here is whether the omitted details were indeed material to the probable-cause determination, a question we approach by asking 'whether a hypothetical affidavit that included the omitted material would still establish probable cause.'" (quoting *Whitlock*, 596 F.3d at 411)).

In response to Defendants' Motions to Dismiss, Patton argued Schmuhl and Thompson omitted material information from the Probable Cause Affidavit regarding the "context" of his 2017 and 2018 emails. At that stage in litigation, the Court was required to accept Patton's allegations regarding the contents of the Probable Cause Affidavit as true. Based on those allegations, the Court found that Schmuhl omitted material information regarding "Patton's ongoing pending civil rights complaint against IU, the dozens of other politically-charged, yet non-threatening emails Patton sent to Reesor between March 26 and May 25, 2018, or the exculpatory statements in Patton's May 25, 2018 email and later emails regarding his 'trolling'" ([Filing No. 134 at 27](#)). The Court held that "[a]ll of this contextual, exculpatory information, combined, could negate a finding a probable cause". *Id.*

However, now that the Court has reviewed the Probable Cause Affidavit itself, the Court cannot find that the Monroe County Circuit Court's finding of probable cause was induced by the Defendants' omission of material facts.  The Probable Cause Affidavit describes Patton's informal complaints regarding his arrest in 2016, his correspondence with OCR, and the purported investigation by the DOE (Filing No. 154-12 at 1).  The Probable Cause Affidavit offers a detailed summary of Patton's correspondence prior to May 25, 2018, and conveys that Patton's emails before that date largely focused on perceived injustices done to him, as well as other political topics.  The Probable Cause Affidavit specifies that Reesor only became concerned about the emails' rhetoric on May 25, 2018, and quotes much of the most inflammatory language from the emails between May 25 and June 1, 2018.  *Id.* at ¶ 3.  The Probable Cause Affidavit further recites most of Patton's three emails sent on June 2, 2018, apologizing for his prior emails, clarifying that the emails were a means of "trolling" and self-expression, and stating he did not mean to threaten anyone.  *Id.* at 3–4.  Patton does not dispute that Schmuhl did not provide any false information to the Monroe County Circuit Court (Filing No. 160-1 at 109:11–14).

Although Schmuhl did not recite all of Patton's emails verbatim in her Probable Cause Affidavit, and did not recite all of Patton's potentially exculpatory references to "trolling," she was not required to do so.  She provided sufficient information to allow the Monroe County Circuit Court to make an independent determination of probable cause, and the Court concludes that none of the details Schmuhl omitted would have negated the Monroe County Circuit Court's probable cause finding.  *Whitlock*, 596 F.3d at 411; *see Leaver*, 844 F.3d at 669.  No material information was omitted from the Probable Cause Affidavit.

There is also no evidence indicating that the Charging Information signed by Thompson was fraudulent or omitted any material information (Filing No. 158-4 at ¶¶ 13, 16).  Although Patton disputes that Reesor was in fact threatened by his emails, he has offered no evidence

showing that Thompson falsely testified that Reesor felt threatened, or otherwise withheld material information that would have negated a finding of probable cause (Filing No. 160-1 at 50:12–22). Thompson, on the other hand, has submitted admissible evidence showing he did not make any false statements in the Charging Information, did not withhold any information he knew would negate a finding of probable cause, and had no reason to believe the information he had received was false (Filing No. 158-4 at ¶¶ 13–14, 16).

Patton has not rebutted the IU Defendants' *prima facie* evidence of probable cause for his 2018 arrest and prosecution, so his First Amendment Retaliation and Fourth Amendment False Arrest Claims must be dismissed.  The Court **grants** Defendants' Motions for Summary Judgment as to Counts I and X–XII as to all Defendants.

Because the unrebutted *prima facie* evidence of probable cause is dispositive of Patton's First and Fourth Amendment claims, the Court need not address Defendants' remaining arguments regarding Counts I and X–XII.

## C.   Patton's Section 1983 Claims – Counts I, V–VII, and XI

Defendants assert several arguments supporting dismissal of Patton's Section 1983 claims, which allege various violations of Patton's First and Fourth Amendment rights. Because all of Patton's Section 1983 claims but one, Count XI for Conspiracy to Injure Using Unlawful Means, have been dismissed. Counts I and X–VII have been dismissed against Reesor, Schmuhl, and Thompson in their official capacities for lack of standing and because the existence of probable cause bars those claims. Counts XIII and VIX were dismissed at the pleadings stage (Filing No. 134 at 36).  Accordingly, the Court will address only Defendants' arguments as to Count XI.

"A § 1983 conspiracy claim requires both (1) an underlying constitutional violation and (2) an agreement among the defendants to inflict the unconstitutional harm." *Green v. Howser*, 942 F.3d 772, 778 (7th Cir. 2019).  Defendants argue Patton lacks evidence to show either element,

but the Court will focus on only the second element, which is dispositive (Filing No. 153 at 31; Filing No. 157 at 21).

Defendants argue that Patton lacks any evidence of an agreement between Defendants to violate his constitutional rights, and Patton has come forward with none. (Filing No. 160-1 at 52:24–53:12 (alleging Thompson entered into an implicit agreement with Reesor and Schmuhl); (Filing No. 158-4 at ¶ 21 (declaring that Thompson did not enter into an agreement with anyone to violate Patton's rights)); *Celotex Corp.*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."); *see, e.g.*, *Keaton v. Hannum*, No. 12-cv-00641, 2014 WL 941314, at *2 (S.D. Ind. Mar, 11, 2014) (awarding defendant summary judgment) ("[Plaintiff's] mere suspicion or speculation that a conspiracy is not enough. 'A party may not cry "conspiracy" to avoid a summary judgment.'" (quoting *Gramenos v. Jewel Cos.*, 797 F.2d 432, 436 (7th Cir. 1986))); *Showalter v. Woodard*, No. 08-cv-01283, 2010 WL 5463086, at *2 n.2 (S.D. Ind. Dec. 27, 2010) (holding defendants were entitled to summary judgment on conspiracy claims because plaintiff "presented no evidence of a conspiracy between the defendants nor of any injury").  The Court therefore **grants** Defendants' Motions for Summary Judgment as to Count XI.

Having found that all of Patton's Section 1983 claims, which encompass all individual capacity claims against Reesor, Schmuhl, and Thompson, must be dismissed for the above reasons, the Court need not address Defendants' remaining arguments regarding Patton's Section 1983 claims, including Defendants' qualified immunity arguments. *See, e.g.*, *Ruffino v. Sheahan*, 218 F.3d 697 (7th Cir. 2000) (restating "well established" principle that qualified immunity applies only to individual capacity claims).

**D.**     **Patton's Title VI Claims – Counts II and XII**

Patton's Counts II and XII are brought under Title VI of the Civil Rights Act. Title VI prohibits discrimination on the basis of race, color, or national origin by a program receiving federal financial assistance. 42 U.S.C. § 2000d. Title VI also prohibits retaliation against those opposing conduct that violates Title VI. 34 C.F.R. § 100.7(e); *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) (referring to Title VI's anti-retaliation provision).

The IU Defendants argue Patton lacks admissible evidence showing any discrimination or retaliation prohibited by Title VI.  The Court agrees.  The IU Defendants have offered admissible evidence from Reesor, Schmuhl, and Spotts that none of them, or any employee, agent, or representative of the University or the IUPD took any action with respect to Patton based on his race, color, or national origin, or because of any complaint Patton made or he alleged he made (Filing No. 153 at 31–32). Patton has come forward with no evidence in response.  The Court therefore **grants** the IU Defendants' Motion for Summary Judgment as to Counts II and XII.

**E.**     **Patton's ADA and Rehabilitation Act Claims – Counts III–IV and XIII–XIV**

Patton's only remaining claims, Counts III–IV against IU and Counts XIII–XIV against IU and the IUPD,[7] allege violations of the ADA and the Rehabilitation Act.  The IU Defendants argue Patton's ADA and Rehabilitation Act claims should be dismissed because Patton cannot show he is disabled or was considered disabled by the IU Defendants, and because his claims do not fall within the "direct threat" provision of the ADA.  The Court will address each argument in turn.

**1.**     **Lack of Evidence of Actual or Perceived Disability**

The IU Defendants argue Patton cannot show he has a "disability" under the ADA or Rehabilitation Act, or that the IU Defendants took any action because of a "disability." "Disability"

---

[7] Counts III–VI and XIII–XIV have been dismissed against Reesor, Schmuhl, and Thompson in their official capacities for lack of standing.

under the ADA is defined to include "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). In the Court's Order on Defendants' Motion to Dismiss, the Court concluded that Patton's Fourth Amended Complaint did not sufficiently allege he had an actual disability at the time he petitioned for readmission, and the unopposed evidence submitted by the IU Defendants confirms that Patton's alleged disabilities (PTSD and anxiety) did not impact any major life activities (Filing No. 153 at 12; Filing No. 160-1 at 46:5–47:11 (identifying Patton's alleged disabilities of PTSD and anxiety but confirming they do not affect major life activities)). The IU Defendants also submitted undisputed evidence showing neither Reesor, Schmuhl, nor any employee, agent, or representative of the University or the IUPD perceived that Patton was disabled or took any action with respect to Patton based on an actual or perceived disability (Filing No. 154-2 at ¶¶ 14, 18, 30; Filing No. 154-3 at ¶ 7; Filing No. 154-4 at ¶ 10). Patton cannot show he was "disabled" and cannot show he was denied readmission or arrest because of a disability, so his ADA and Rehabilitation Act claims cannot survive summary judgment.

### 2.     Misapplication of "Direct Threat" Defense

The IU Defendants also address Patton's allegations regarding the "direct threat" provision in the ADA and incorporated into the Rehabilitation Act, and they argue that the "direct threat" provision does not apply here. The Court again agrees with the IU Defendants.

The "direct threat" defense provides an affirmative defense to disability discrimination claims if a defendant proves the plaintiff posed a direct threat of safety to himself or others that a reasonable accommodation cannot eliminate. 42 U.S.C. § 12113; 29 C.F.R. § 1630.2(r); *see Branham v. Snow*, 392 F.3d 896, 905–06 (7th Cir. 2004). Patton's Fourth Amended Complaint alleges he was disabled but that IU lacked sufficient evidence to show he was a "direct threat," so the denial of his request for readmission was discriminatory (Filing No. 91-1 at ¶¶ 114–115).

However, whether Patton posed a "direct threat" is immaterial. The "direct threat" defense is an affirmative defense that the IU Defendants may choose to raise but are not required to raise. Defendants instead chose to defend against Patton's claims by arguing he cannot show he was "disabled" and that his alleged disability was not a "but for" cause of the denial of his request for readmission (Filing No. 153 at 32–34).

The fact that the IU Defendants have not raised a "direct threat" affirmative defense is not a bar to summary judgment on Patton's ADA and Rehabilitation Act claims. The Court **grants** Defendants' Motions for Summary Judgment as to Counts III–IV and XIII–XIV.

### IV.   <u>CONCLUSION</u>

For the reasons discussed above, the Court **GRANTS** Defendants' Motions for Summary Judgment (Filing No. 152; Filing No. 156). Final judgment will issue under separate order.

**SO ORDERED**.

Date:   2/7/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana


DISTRIBUTION:

Daven A. Patton
542 8th Street
Hermosa Beach, California  90254

LaShay Byrd
FREEMAN MATHIS & GARY, LLP
lashay.byrd@fmglaw.com

Curtis Matthew Graham
FREEMAN MATHIS & GARY, LLP
cgraham@fmglaw.com

Vivek Randle Hadley
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
vhadley@taftlaw.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL'S OFFICE
gustavo.jimenez@atg.in.gov

Ann O. McCready
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
amccready@taftlaw.com

Kayla D Moody-Grant
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
KMoody-Grant@taftlaw.com

Casey C. Stansbury
FREEMAN MATHIS & GARY, LLP
cstansbury@fmglaw.com

Jeffrey D. Stemerick
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jstemerick@taftlaw.com